UNITED STATES DITRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Criminal No.: 2:19-CR-157 |
| CARL MARTIN, a.k.a. Dre, ) | |
| Defendant ) | |

**GOVERNMENT'S MOTIONS IN LIMINE AND REQUEST FOR HEARING**

The United States, by and through its attorney, Nikolas P. Kerest, United States Attorney for the District of Vermont, respectfully submits these motions *in limine* and requests a hearing. For the reasons set forth below, the Court should grant the Government's motions. The Government and counsel for Defendant Carl Martin have conducted several meetings relating to the issues raised herein. Defendant does not consent to the relief sought.

**INTRODUCTION**

Defendant Carl Martin will soon stand trial in connection with the First Superseding Indictment charging him with eight Counts: a drug conspiracy, possession of a firearm in furtherance of a drug trafficking crime, and six Counts of distribution of cocaine. *See* Doc. No. 48 (charging violations of 21 U.S.C. §§ 841, 846, 18 U.S.C. § 924(c)). Defense counsel has indicated that he intends to introduce the affirmative defense of entrapment. Defendant's proposed entrapment defense raises a host of procedural and substantive issues that the Government believes should be addressed prior to trial. An entrapment defense has two elements: (1) inducement, and (2) absence of predisposition. *See, e.g., United States v. Cabrera*, 13 F.4th 140, 147 (2d Cir. 2021) (holding "the defendant has the burden to produce 'some credible' evidence – but need not prove by a preponderance of the evidence – that the government induced him to commit the crime."). This motion seeks orders: (1) barring

1

Defendant from raising an entrapment defense before the jury unless and until he is able to demonstrate that there is some credible evidence that he was induced to commit each of the charged offenses; (2) in the event Defendant is permitted to introduce an entrapment defense, requiring Defendant to satisfy his inducement burden prior to necessitating the Government introduce predisposition evidence; (3) permitting the Government to introduce predisposition evidence if Defendant satisfies his inducement burden; and (4) requiring Defendant, at the close of evidence, to have satisfied his inducement burden and demonstrated absence of predisposition prior to obtaining a jury charge on entrapment.

This motion additionally seeks a ruling permitting the Government to use transcriptions of controlled buys and recorded interviews of Defendant and other witnesses to aid the jury's understanding of the recordings.

## FACTUAL BACKGROUND[1]

In February 2018, Defendant Carl Martin was involved in an altercation outside Nectar's bar on Main Street in Burlington, VT. During that incident, Martin punched Rashid Nashid and then pulled out a firearm. In response, Mr. Nashid pulled his own gun and fired. Nashid's shot struck an innocent bystander who was seriously injured, but who survived. Martin was not charged in connection with this incident, but he admitted to police that right before the shooting, he had pulled a firearm on Nashid. A surveillance video of the incident corroborates these facts.

In the fall of 2018, the Vermont Drug Task Force opened an investigation into the sale of cocaine by Martin. Between June 25, 2019 and October 23, 2019, law enforcement used a confidential informant (CI), along with an undercover officer (UC), to conduct nine controlled purchases of cocaine from Martin. Martin was assisted in the sale of cocaine by Mirnes

---

[1] The facts found in this motion are those the government expects to prove at trial.

Julardzija and Brian Correa-Santiago.[2] The forensic lab later determined that the substances purchased from Martin on June 25, July 23, August 26, September 5, September 20, and October 23 contained cocaine. These controlled buys form the basis for Counts 3 through 7 of the First Superseding Indictment. The substances from the other purchases (on June 28, August 9, and August 16) did not test positive for cocaine.

In early October 2019, Martin, along with Octavious Allen-Napier and Peter Ngyuen, planned to commit a Hobbs Act robbery of another local drug dealer. The Government anticipates that two witnesses will testify regarding the planning of this robbery and one of the witnesses will testify that on the day of the robbery, Martin possessed a firearm. Martin, Allen-Napier, and Nguyen took substantial steps toward completing the robbery, including going to the victim's house with guns and zip ties and knocking on the door. Fortunately, the robbery target was not home, and the robbery was aborted. Shortly after, Martin and Allen-Napier approached the CI in this case and asked the CI about obtaining a firearm for Allen-Napier. The CI passed this information along to the UC and the UC exchanged text messages with Allen-Napier about getting Allen-Napier a gun.

A few days later, the CI told the UC that Martin was interested in acquiring a firearm. On October 21, 2019, the UC sent a text to Martin which read: "Yo red says ur lookin for something lmk if I can help." Martin responded the next day: "Yeah, like 357. Has to be clean." The UC then told Martin he had a "38" he could trade to Martin, and if the UC obtained a 357,

---

[2] On August 17, 2020, Julardzjia pleaded guilty to conspiracy to distribute cocaine, in violation of 21 U.S.C. §§ 841(a)(1), 846. He is awaiting sentencing. On September 20, 2021, Correa-Santiago pleaded guilty to distribution of cocaine, in violation of 21 U.S.C. § 841(a)(1). He also awaits sentencing.

he could later swap out the 38 for the 357. Martin agreed to pay $300 for the UC's 38, and UC arranged to purchase two ounces of cocaine from Martin for $2100 per ounce.

On October 23, 2019, the UC met Martin and Julardzija in the parking lot of McDonald's in Colchester for the firearm and cocaine transaction. This conduct forms the basis for Counts 2 and 8 of the First Superseding Indictment. During that meeting, the UC gave Martin a prop firearm and $3900 ($4200 for the cocaine minus $300 for the firearm). In exchange, Martin gave the UC approximately two ounces of cocaine. After the exchange, both Martin and Julardzija were arrested on federal charges. The cell phone seized from Martin upon his arrest on October 23, 2019, contains text messages corroborating the controlled drug purchases described above and the planning of the early October 2019 robbery, including text messages with Julardzija in which Martin asks Julardzija for a firearm and photographs of firearms.

## ARGUMENT

I.  **Defendant's Entrapment Defense Should Be Precluded As A Matter Of Law Unless He Is Able To Proffer Evidence Supporting Its Introduction**

Defendant has suggested that he will argue at trial that the Government induced him to commit each of the offenses charged in the Superseding Indictment and seek an acquittal based on an entrapment defense. To submit an entrapment defense Defendant must proffer "some credible evidence" that he was induced to commit any crimes as to which he argues entrapment. *See, e.g., Cabrera*, 13 F.4th at 147 (noting "[i]nducement is merely the threshold inquiry for whether the defense of entrapment is at issue" and holding "the defendant has the burden to produce some credible evidence – but need not prove by a preponderance of the evidence – that the government induced him to commit the crime.") (quotations omitted). If Defendant meets his burden of producing "some credible evidence" of inducement, "the government has the

4

burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime." *Id.* at 146 (quoting *United States v. Flores*, 945 F.3d 687, 717 (2d Cir. 2019)).

The first element of an entrapment defense, inducement, "happens when the government has initiated the crime" and "covers soliciting, proposing, initiating, broaching or suggesting the commission of the offense charged." *Cabreara*, 13 F.4th at 146 (citations and quotations omitted). The law recognizes that "[t]he entrapment defense thus seeks to protect the 'unwary innocent' while leaving room for investigative techniques that catch the 'unwary criminal who readily availed himself of the opportunity to perpetrate the crime.'" *Id.* (quoting *Matthews v. United States*, 485 U.S. 58, 63 (1988)).

Here, Defendant has not indicated what evidence he plans to introduce to demonstrate he was induced to commit any of the charged conduct. Absent evidence suggesting that the Government induced the charged crimes, Defendant should not be permitted to raise the specter of an entrapment defense given the significant attendant risks of jury confusion and the corresponding introduction of significant rebuttal evidence (described *infra*) of Defendant's predisposition to commit the charged offenses. Accordingly, the Government submits that Defendant's entrapment defense should be barred unless he is able to make a threshold showing of an ability to introduce some credible evidence of inducement as to each charged crime. *See United States v. Scully*, No. 14-cr-208(ADS), 2015 WL 5826493, at *1-2 (E.D.N.Y. Oct. 6, 2015) (addressing necessity defense and observing when an affirmative defense is challenged on a motion in limine "[t]he sole question presented . . . is whether the evidence, as described by the defendant, is insufficient as a matter of law to support the proffered defense."), *aff'd*, 12 F. App'x 59 (2d Cir. 2001).

## II. If Defendant Is Permitted To Raise An Entrapment Defense He Must Meet His Burden Of Producing Some Credible Evidence Of Inducement Prior To The Government Being Required To Establish His Predisposition

If Defendant satisfactorily proffers some credible evidence of inducement and he is permitted to raise entrapment before the jury, then the Government submits *in limine* that the Court should evaluate whether the evidence he adduces at trial satisfies his inducement burden prior to requiring the Government to rebut the defense with evidence of Defendant's predisposition.  In *United States v. Bailey*, the Supreme Court held that where—as here—"an affirmative defense consists of several elements and testimony supporting one element is insufficient to sustain it even if believed, the trial court and jury need not be burdened with testimony supporting other elements of the defense." *United States v. Bailey*, 100 S. Ct. 624, 638 (1980).

Defendant has not established what evidence he intends to rely on to satisfy his burden and the Government does not concede that Defendant can meet his threshold showing.  An entrapment argument creates significant risk of jury confusion and evidence relating to Defendant's predisposition is potentially prejudicial; accordingly, the jury should not receive such evidence unless and until Defendant satisfies his initial burden of production.  Therefore, the Government requests Defendant be required to satisfy his burden of producing some credible evidence of inducement prior to the close of the Government's case and before the Government is required to introduce evidence demonstrating Defendant's predisposition.  Proceeding in this fashion will, among other things, ensure that the jury does not hear potentially prejudicial predisposition evidence unless it is clear that the Defendant has satisfied his initial burden.

**III.    Defendant's Entrapment Defense Permits Introduction Of Predisposition Evidence**

In the event Defendant raises an entrapment defense and meets the standard to do so, the Government moves *in limine* to admit evidence demonstrating Defendant's predisposition to commit the charged crimes, including, but not limited to evidence relating to: (a) Defendant's prior possession of firearms, including but not limited to in connection with a February 26, 2018 shooting outside the Nectar's nightclub, other incidents of firearm possession and efforts to procure firearms, and the early October 2019 attempted robbery; and (b) Defendant's involvement with other narcotics trafficking incidents.

**A.    Legal Standard**

As noted above, if Defendant meets his inducement burden then "the Government has the burden of proving beyond a reasonable doubt that the defendant was predisposed to commit the crime."  *Cabrera*, 13 F.4th at 146 (quotation omitted).  Predisposition may be established by demonstrating any of the following: "(1) an existing course of criminal conduct similar to the crime for which [the defendant] is charged, (2) an already formed design on the part of the accused to commit the crime for which he is charged, or (3) a willingness to commit the crime for which he is charged as evidenced by the accused's ready response to the inducement." *United States v. Valencia*, 645 F.2d 1158, 1167 (2d Cir. 1980) (quoting *United States v. Viviano*, 437 F.2d 295, 299 (2d Cir.), *cert. denied*, 402 U.S. 983 (1971)), *amended*, 669 F.2d 37 (2d Cir. 1981).  "A defendant is predisposed to commit a crime if he is 'ready and willing without persuasion' to commit the crime charged and 'awaiting any propitious opportunity' to do so." *United States v. Salerno*, 66 F.3d 544, 547 (2d Cir. 1995) (quoting *United States v. Harvey*, 991 F.2d 981, 992 (2d Cir. 1993)).

The Second Circuit has indicted that "evidence of prior criminal conduct [need not] be

7

formally the same as the crime charged," but rather that predisposition evidence need only be "morally indistinguishable" from the crime charged and "of the same kind." *Viviano*, 437 F.2d at 299 n.3 (citation omitted). Evidence relating to past conduct "should be near enough in kind to support an inference that [defendant's] purpose included offenses of the sort charged" but need not "be precisely the same as that for which the defendant is being prosecuted." *Harvey*, 991 F.2d at 994 (citation omitted). Further, where evidence of past conduct is offered to show predisposition, that past conduct need not be criminal to be admissible. *United States v. Gantzer*, 810 F.2d 349, 352 (2d Cir. 1987). Evidence of an "existing course of criminal conduct" similar to the charged crimes may include events that occurred both before and after any alleged inducement. *See United States v. Silvestri*, 719 F.2d 577, 583 (2d Cir. 1983).

### B.   Application

If Defendant satisfies his threshold inducement showing, the Government will move to introduce evidence of Defendant's criminal disposition. *See United States v. Anzalone*, 626 F.2d 239, 245-46 (2d Cir. 1980); *United States v. Sherman*, 240 F.2d 949, 953 (2d Cir. 1957), *rev'd on other grounds*, 356 U.S. 369 (1958). The Government will seek to rebut the defense by proving Defendant's predisposition through the admission of evidence in the form of Defendant's prior: (a) involvement with and possession of firearms, and (b) narcotics trafficking.

### 1.   Defendant's Prior Involvement With And Possession Of Firearms

If Defendant meets his burden of producing "some credible evidence" that he was induced to commit the charged firearms offense (Count 2), the Government should be permitted to introduce predisposition evidence establishing Defendant's interest in acquiring and prior possession of firearms, including in connection with the incidents described below.

First, the Government moves to introduce evidence relating to Defendant's possession of a firearm in February 2018 in connection with the dispute outside the Nectar's nightclub. As described in part *supra*, on February 26, 2018, Rashad Nashid had a dispute with Defendant's brother, Dennis. After the nightclub closed at around 2am, Defendant and Mr. Nashid encountered each other outside the club. Defendant punched Mr. Nashid and then pulled out a firearm and pointed it at him. After Defendant pulled the firearm, Mr. Nashid raised his own weapon and shot into the crowd outside Nectar's. A young, innocent bystander was struck and hospitalized.

The Government intends to introduce evidence relating to Defendant's possession of a firearm in connection with this incident, including, but not limited to: (a) calling witnesses that observed and/or discussed with Defendant his brandishing a firearm in connection with the Nectar's shooting; (b) introducing Defendant's own statements about possessing a firearm in connection with this incident; and (3) introducing a video wherein Defendant can be seen possessing the firearm. Such evidence is necessary for the jury to consider Defendant's entrapment defense and to allow it to determine whether Defendant had a "predisposition" to possess firearms.

Second, the Government should be permitted to introduce evidence relating to Defendant's October 2019 possession of a firearm in connection with an attempted robbery. In early October 2019, Defendant, together with Octavius Allen-Napier and Peter Nguyen, conspired to rob a known drug dealer who operated a food cart on Church Street, Burlington. The trio went to the drug dealer's home on South Williams Street with zip ties and they each—including Defendant—possessed a firearm. The Government should be permitted to introduce evidence relating to this incident by, amongst other things: (a) calling witnesses who observed

Defendant in possession of the firearm; (b) introducing text messages relating to the planning and preparation of the planned robbery; (c) introducing photographs of firearms that were on Defendant's cell phone contemporaneous to the planned robbery; and (d) calling witnesses who discussed the planned robbery with Defendant and/or with whom Defendant discussed his interest in obtaining a firearm in connection with the planned robbery.

Evidence of Defendant's prior possession of firearms is critical to rebut Defendant's assertion that he was induced by the Government to procure a firearm. If Defendant suggests to the jury that he only acquired the firearm underlying Count 2 because the Government induced him to do so, then the Government may properly rebut that argument by demonstrating that Mr. Martin was ready and willing to acquire a firearm and previously possessed and demonstrated interests in acquiring firearms. *See United States v. Baez*, 761 F. App'x 23, 25 (2d Cir. 2019) (affirming felon in possession charge and finding court did not abuse discretion in determining statements about armed robbery were probative of predisposition because they showed "'predisposition to engage in criminal activity involving firearms . . . .'"); *see also United States v. McLaurin*, 764 F.3d 372, 382-83 (4th Cir. 2014) (holding that defendant's possession of a firearm eight months prior to arrest in sting operation was "similar enough to establish predisposition because it involved [the defendant's] knowing possession of a firearm, as the success of the planned robbery depended on [the defendants] being willing to sufficiently arm themselves"); *United States v. Mayo*, 705 F.2d 62, 68-69 (2d Cir. 1983) (finding there was "substantial evidence of [defendant's] predisposition to violate the firearms laws" where the government introduced evidence of his prior conviction under the firearms laws as well as his unlawful possession of firearms prior to any inducement).

Accordingly, if Defendant raises an entrapment defense as to Count 2 the Government

should be permitted to introduce evidence of these acts to show Defendant's predisposition to acquire and possess a firearm.

## 2. Defendant's Predisposition To Traffic Narcotics

The Government should be permitted to respond to a showing by Defendant that he was induced to commit each of the charged drug trafficking offenses with evidence demonstrating his predisposition to commit such crimes. *United States v. Jackson*, 345 F.3d 59, 66 (2d Cir. 2003) (affirming drug convictions and finding government's evidence of predisposition sufficient). In affirming convictions in *Jackson*, the Second Circuit noted that a defendant "engaged in a series of drug transactions with the informant over a period of several months" was familiar "with the terminology and operations of the drug trade," and had previously engaged in drug transactions. *Id.*

Here, too, the Government anticipates introducing evidence that Mr. Martin was familiar with the drug trade and involved in drug trafficking activity beyond the conduct underlying the charged crimes. The Government thus moves *in limine* to introduce evidence relating to Defendant's predisposition to traffic narcotics through evidence, including but not limited to: (a) witness testimony relating to Defendant procuring and selling drugs; (b) Defendant's text messages relating to other drug transactions; (c) witness testimony relating to purchasing narcotics from Defendant; and (d) witness testimony, photographs, and text messages relating to Defendant's October 2019 efforts to rob another drug dealer. *See, e.g., United States v. Hurtado*, 47 F.3d 577, 585 (2d Cir. 1995) (affirming conviction after government introduced predisposition evidence of drug dealing and noting "there [is] ample proof that [the defendant] had been involved in drug dealing prior to any involvement with a government agent or informant"). Evidence relating to Defendant's familiarity with the drug trade, his access to a

11

"readily available source of supply for cocaine," and his uncharged drug trafficking activities are important evidence for a jury to consider in evaluating Defendant's proposed entrapment defense. *See, e.g., Valencia,* 645 F.2d at 1167 (evidence that defendants had a "readily available source of supply for cocaine" and "were somewhat experienced with cocaine transactions" supported an inference that they had previously been engaged in a similar course of criminal conduct, and thereby established predisposition).

IV.    **If Defendant Cannot Establish An Entrapment Defense The Court Should Decline To Charge The Jury On Entrapment And Instruct The Jury That Entrapment Is Not At Issue**

    The Government does not believe interjecting an entrapment defense into this trial is appropriate; however, in the event evidence relating to both prongs of Defendant's proffered entrapment defense are introduced to the jury, the Court should evaluate whether the defense is legally sufficient prior to charging the jury on an entrapment defense. "A federal court may decline to instruct on an affirmative defense . . . when the evidence in support of such a defense would be legally insufficient." *United States v. White*, 552 F.3d 240, 246 (2d Cir. 2009) (internal quotation marks omitted).

    The Second Circuit has affirmed a conviction in similar contexts where entrapment evidence was introduced but found legally insufficient to warrant a jury charge. In *Hurtado*, the jury received both inducement and predisposition evidence. At the close evidence, the district court declined an entrapment charge given the strength of the predisposition evidence, finding "there [is] ample proof that [the defendant] had been involved in drug dealing prior to any involvement with a government agent or informant." *Hurtado,* 47 F.3d at 585 (affirming conviction after government introduced predisposition evidence of drug dealing). The Second Circuit affirmed finding that the "district court did not err in declining to instruct the jury on

entrapment." *Id*; *see also United States v. Barnes*, 604 F.2d 121, 160 (2d Cir. 1979) (district court justified in denying entrapment charge and noting "[e]ven if the accused had met his burden in showing inducement, once the Government has proved propensity by 'substantial evidence' which stands uncontradicted, a charge on entrapment is properly denied.") (citation omitted); *United States v. Abdalla*, 346 F. Supp. 3d 420, 428 (S.D.N.Y. 2018) (denying government request to preclude an entrapment defense pre-trial and noting "[i]f at trial, however, the Defendants are unable to present sufficient evidence to support an entrapment defense, the Court will instruct the jury that entrapment is not a defense in this case.").

In the Government's view, the evidence that Defendant was predisposed to commit the charged offenses is both compelling and substantial, and the jury should not be charged on entrapment if the Government proves Defendant's disposition to commit the charges crimes. Accordingly, at the close of the evidence the Government requests that the Court evaluate whether an entrapment charge is proper in this case, and if so, as to which counts.

**V.     The Government Should Be Permitted To Introduce Transcripts Of Recordings Of The Charged Crimes And Witness Interviews As An Aid For The Jury To Understand The Substance Of The Recordings**

The Government recorded each of Defendant's charged cocaine transactions and his October 23, 2019 firearm purchase. The Government additionally has recordings of Defendant's February 28, 2018, and March 2, 2018 interviews, and Defendant's post-arrest October 23, 2019 interview. Due to ordinary environmental factors—such as wind, passing vehicles, and microphone placement—there are moments during some of the recordings where it is difficult to hear the conversations. The Government has accordingly prepared transcripts of each of the recordings and will provide them to defense counsel for review. The transcripts will assist the

jury in understanding what was said during the charged interactions and interviews and the Government requests the Court permit these transcripts to be published during trial.

## CONCLUSION

For the reasons set forth above, the Government respectfully requests that the Court grant its Motions *In Limine*.

Dated at Burlington, in the District of Vermont, this 6th day of January 2022.

        Respectfully submitted,

        NIKOLAS P. KEREST
        United States Attorney

By:    /s/ Owen Foster
        Owen C. J. Foster
        Wendy L. Fuller
        Assistant U.S. Attorneys
        P.O. Box 570
        Burlington VT 05402-0570
        (802) 951-6725
        Owen.c.j.foster@usdoj.gov
        Wendy.fuller@usdoj.gov