<pre>
 1                    UNITED STATES DISTRICT COURT
                             FOR THE
 2                      DISTRICT OF VERMONT

 3
     United States of America    )
 4                               )
                                 )
 5   v.                          ) Case No. 2:19-cr-157
                                 )
 6                               )
     Carl Martin                 )
 7                               )
     _____)
 8

 9   RE:  Motion in Limine to Inquire as to Attorney-Client
          Communications During Cross-Examination of Cooperating
10        Witnesses, Motion in Limine as to Predisposition Evidence,
          Motion to Dismiss Count 3 and Count 4 of the First
11        Superseding Indictment, and Final Pretrial Conference.

12   DATE:  June 2, 2022

13   LOCATION:  Burlington, Vermont

14   BEFORE:  The Honorable William K. Sessions, III
                  Senior District Judge
15

16   **APPEARANCES**:

17   Wendy L. Fuller, AUSA
     Andrew C. Gilman, AUSA
18   Owen C.J. Foster, AUSA
     United States Attorney's Office
19   District of Vermont
     PO Box 570
20   Burlington, VT 05402-0570

21   Chandler W. Matson, Esq.
     Barr Law Group, PLC
22   125 Mountain Road
     Stowe, VT 05672
23

24        TRANSCRIBED BY:  Sunnie Elizabeth Donath, RMR
                    United States District Court Reporter
25                      *verbatim@vermontel.net*
</pre>

```
 1                    (The Court opened at 1:30 p.m.)
 2               COURTROOM DEPUTY:  Your Honor, this is Criminal
 3    Number 19-157, Defendant Number 1, United states of America
 4    versus Carl Martin.  The government is present through
 5    Assistant United States Attorneys Wendy Fuller, Owen Foster,
 6    and Andrew Gilman.  The defendant is present with his attorney,
 7    Chandler Matson.  The matter before the Court is a motion in
 8    limine to inquire as to attorney-client communications during
 9    cross-examination of cooperating witnesses and as to
10    predisposition evidence and a motion to dismiss Counts 3 and 4
11    of the first superseding indictment and a final pretrial
12    conference.
13               THE COURT:  All right.  Mr. Matson, you filed a
14    motion in limine, and I'll hear you in regard to that motion.
15               ATTORNEY MATSON:  Thank you, Your Honor.  Your Honor,
16    let's take up the question of the predisposition --
17               THE COURT:  Yes.
18               ATTORNEY MATSON:  -- evidence first.  So I want to
19    say at the outset I do agree that we've been here before and
20    we've talked about that predisposition evidence coming in.  I
21    guess what prompted my motion in limine was when I saw that
22    Nguyen was the purported witness as to that predisposition
23    evidence.  I, maybe I made an assumption, but the assumption
24    was that, if they wanted to raise an issue of possession of
25    firearms prior, fine.  I can see the relevance of that in a
```

1    case like this as to predisposition, but Nguyen's testimony in

2    particular really goes into this more detail about the, quote,

3    robbery, the attempted robbery, whatever it is, and that bears

4    very little resemblance to any of the charges put in front of

5    the jury.  So --

6            THE COURT:  So I, I read your memorandum, and, when

7    we're talking about predisposition, you seem to confuse the

8    issue, at least as regard to the Hobbs Act.  Essentially, the

9    government is seeking to introduce all of those discussions in

10   preparation for a Hobbs Act violation, because it's relevant to

11   the gun charge, and you have raised an entrapment defense, not

12   just of the, of the cocaine offenses, but also the gun charge.

13           You know, it raises to me a question.  First of all, do

14   you really have an entrapment defense on the gun charge, and,

15   if so, is it obvious that a discussion involving the defendant

16   with a coconspirator for a violent Hobbs Act violation with

17   guns, et cetera, occurring in October of 2019, just about the

18   same time of these particular offenses -- in fact, it's the

19   same time as the 924(c) count alleges.  Isn't it, isn't it just

20   very clear evidence of predisposition?

21           ATTORNEY MATSON:  Well, Your Honor, two things.  I

22   clearly didn't think I confused the issue, but -- I did not

23   think that I confused the issue or did I continue, but I

24   respect Your Honor's opinion on that.

25           THE COURT:  Okay.  Well, no.  I looked at the

1    pleadings, and you kept talking about there's no predisposition

2    in regard to narcotics, right?  Well, then --

3              ATTORNEY MATSON:  Judge, a 924 requires, right, a

4    924(c) requires, not just guns in any circumstance, it's a drug

5    deal.  It is an alleged drug deal during which a firearm was

6    traded in lieu of currency.  That's what this is.

7              THE COURT:  Right.

8              ATTORNEY MATSON:  That's not Hobbs Act.  That's not a

9    robbery.  It's not a robbery.  It's the gun was supposed to be

10   money.  Instead of money, I'll take the gun.  I don't -- I

11   think that's pretty straightforward.  When we get into all

12   these other issues with the Hobbs Act and the robbery and

13   whatever else implements were used, well, that would be a way

14   for a predisposition to, again, have a drug deal, and, in the

15   drug deal, currency is replaced for a firearm.  That's a

16   distinct issue.

17        And now it's just talking about things that may make

18   someone look bad, and that's, that's where the line gets drawn

19   where it becomes prejudicial because that is, okay, evidence of

20   the predisposition to what, crime?  Predisposition to robbery?

21   Fine, predisposition to robbery.  He's not on trial for

22   robbery, though.

23             THE COURT:  Well, all right.  So maybe I'm a bit

24   confused by your argument.  So what you're suggesting is you

25   are not, you are not arguing that he was not predisposed to

1    possess firearms?

2              ATTORNEY MATSON:  Correct.

3              THE COURT:  Is that it?

4              ATTORNEY MATSON:  Right.  And that's what I

5    understood the predisposition that the government intended to

6    bring in was that he was predisposed to possess firearms, to

7    acquire firearms, to get firearms through various sources.  I

8    get it.  That is, that is relevant predisposition evidence.  It

9    doesn't matter whether I agree with it or whether I accept it

10   for its truth.  I agree that it's relevant, however.  When we

11   start to get too far afield of that and again start to get into

12   the details of this uncharged robbery, I feel like we've left

13   the realm of relevance, because he's not on trial for robbery.

14   I'm not saying he's entrapped into a robbery.  He's not charged

15   with it.

16             THE COURT:  All right.  So what you're -- I'll just

17   approach it this way:  So a possession of a firearm in

18   furtherance of a drug conspiracy, you've got to prove, number

19   one, possession of a firearm and, number two, in furtherance of

20   the drug conspiracy.  What you're suggesting is that you are

21   not in any way suggesting that he was not predisposed to

22   possess a firearm?  You're, you are going to acknowledge that

23   to the jury that, you know, he, he was perfectly predisposed to

24   have a firearm?

25             ATTORNEY MATSON:  No, I'm not -- even if it were

1    predisposition beyond a reasonable doubt, I'm not going to

2    concede any predisposition.

3              THE COURT:  So, in other words, they have to prove

4    predisposition for both elements of the offense.  That's

5    possession of the firearm as well as intent in furtherance of a

6    drug conspiracy.  Then predisposition evidence has to be

7    proven, and then he would be able to bring in the Hobbs Act,

8    unless you stood up and said, Oh, you know, we admit that he

9    would be in furtherance of a, or that he would be in possession

10    of a firearm.  It's just, it's not in furtherance of the, of

11    the conspiracy; is that right?

12              ATTORNEY MATSON:  I didn't think so, Judge, but again

13    --

14              THE COURT:  Okay.  Anyway --

15              ATTORNEY MATSON:  There has to be a line drawn where

16    it gets too far afield, right, where we're no longer talking

17    about the evidence.

18              THE COURT:  This is the quality of the evidence.  I

19    understand it, but it does seem to me that, if you have to, if

20    the government has to prove possession of a firearm and you

21    have an entrapment defense which relates to possession of a

22    firearm as well as in furtherance of the drug conspiracy, then

23    they have to be able to show predisposition, i.e. the Hobbs

24    Act, in October of 2019.  Isn't that self-evident?

25              ATTORNEY MATSON:  I don't think that they need to go

1    into the, the robbery, no, Judge.  They wanted somebody to say

2    -- and this is why.  There is another individual -- his last

3    name is Hyde -- who I saw his testimony prior from the grand

4    jury, and Hyde said, I had seen Mr. Martin with a firearm, all

5    right, and Mr. Martin expressed that he wanted and would like

6    to get a firearm, right?  He was predisposed to taking a

7    firearm from whatever source, right?  That is heartland

8    predisposition that I do not concede, but I absolutely concede

9    its relevance.

10              THE COURT:  Right.

11              ATTORNEY MATSON:  And, evidently, when we go beyond

12    that into, you know, what he's doing with a firearm allegedly,

13    then I think we've gone too far.

14              THE COURT:  So let's just assume there's some

15    discussion between the codefendant or the coconspirator in the

16    Hobbs Act about possessing or bringing firearms to their

17    planned venture.  When, what you want to do would be to permit

18    the government to talk about all of the things that were said

19    with Peter whatever-his-name-was about possession of firearms,

20    use of firearms, but then not get into the details of what they

21    plan the Hobbs Act?

22              ATTORNEY MATSON:  Correct, Judge.

23              THE COURT:  In other words, what you would want to do

24    is limit their discussion about the objective of the

25    conspiracy; it's just that the two of them were going to get

1    together and use firearms?

2              ATTORNEY MATSON:  Correct, Judge.  That's, that is my

3    position.

4              THE COURT:  Okay.  So let me, let me get the

5    government's response to that and think more, more about that.

6    Do you have a second motion in limine as well?

7              ATTORNEY MATSON:  I do, Judge.  Again, I did not find

8    a case directly on point.

9              THE COURT:  The government did, though?

10             ATTORNEY MATSON:  No.

11             THE COURT:  No?

12             ATTORNEY MATSON:  All I'll do is reaffirm that Your

13   Honor has discretion, and I, I can see Your Honor has

14   discretion.

15             THE COURT:  Oh, good.

16             ATTORNEY MATSON:  And I ask for you to use your

17   discretion --

18             THE COURT:  Oh, okay.

19             ATTORNEY MATSON:  -- for the defense's point of view.

20             THE COURT:  But in the *Logan* case, the court, the

21   Second Circuit said the court has discretion.

22             ATTORNEY MATSON:  Correct.

23             THE COURT:  So --

24             ATTORNEY MATSON:  Right.  And it wasn't abuse of the

25   discretion.  Judge, there gets to be a point where these

1    cooperation agreements are very misleading, and I don't -- I'm
2    not breaking attorney-client privilege. I've seen it. I've
3    been there. There's got to be a conversation with a defendant
4    who's going to cooperate. The guidelines analysis is
5    calculated. Sometimes a defendant enters into a minimum
6    mandatory plea.
7         It makes it look like, Oh, my goodness, this witness here,
8    things got worse for them when they cooperated, because the
9    jury has no clue that you can't go beneath the minimum
10   mandatory unless you cooperate. And, Judge, bias and
11   motivation and what they hope to accomplish in cooperating,
12   what the witnesses hope to accomplish by testifying at a trial,
13   that goes directly to their motivation and their bias against
14   Mr. Martin and in favor of themselves, and, when we paint a
15   misleading picture, Judge, and I'm not allowed to inquire about
16   it, the Sixth Amendment trumps attorney-client privilege.
17        THE COURT: Well, it would trump attorney-client
18   privilege maybe in circumstances where the fundamental
19   information would go, not just to an issue of credibility, but
20   to be, to a substantive fact. Here, the, the defendant or the
21   witness -- if the witness was to testify, he would be
22   cross-examined about his understanding of the agreement, all
23   that led, led into his acceptance of the agreement. So you're
24   going over the same issues that you would theoretically go over
25   if you had attorney-client privilege. There's only a, you

1    know, only an issue of a slight difference in weight and,

2    counter to that, a violation of really the sacrosanct

3    attorney-client privilege.  When you're only dealing with an

4    issue of credibility, that's a long stretch, seems to me.

5                ATTORNEY MATSON:  I think, Judge, that, certainly,

6    the guidelines calculation, if someone thinks, The lawyer just

7    told me the guidelines calculation puts me at, you know, 28,

8    30, well, I'd better cooperate.  I think I agree with -- I

9    appreciate the attorney-client privilege.  I'm for it.

10               THE COURT:  Right.

11               ATTORNEY MATSON:  However, I'm not for misleading the

12   jury about what motivations may lie in the mind of a witness.

13               THE COURT:  You like attorney-client privilege?

14               ATTORNEY MATSON:  I do, Judge.  I believe in it.

15               THE COURT:  Well, you raise a question about whether

16   an attorney's statement to a client about the guideline ranges

17   would even be admissible in the first place.  I mean, that is

18   prejudicial.  That shows what a defendant is facing by way of

19   penalty in a jury trial and --

20               ATTORNEY MATSON:  A witness.

21               THE COURT:  Oh, that would be --

22               ATTORNEY MATSON:  A witness, Judge.

23               THE COURT:  -- pretty significant.

24               ATTORNEY MATSON:  A witness, though, not a defendant.

25   I believe in the attorney-client privilege, but, first and

1    foremost, I believe in a fair trial where a defendant gets to

2    ask a witness everything that led into why that witness is up

3    on the stand to get out of their own wrongdoing and blame

4    somebody else.

5                THE COURT:  Well, okay, appreciate that.

6                ATTORNEY MATSON:  Thank you, Your Honor.

7                THE COURT:  All right.  So the government's response?

8                ATTORNEY FOSTER:  Your Honor, first, on the motion in

9    limine about Mr. Nguyen's testimony -- the defendant's

10   possession of a gun in connection with the Hobbs Act robbery in

11   October of 2019, as the Court knows, is very close in time to

12   when he was seeking to possess a gun in connection with the

13   firearms reverse.  We think that the possession in that context

14   shows an interest in acquiring a gun, which we have to prove

15   that he possessed one and was trying to acquire one,

16   familiarity with guns, familiarity with how to get a gun, knows

17   where to get them, and that he will use them for an illegal

18   purpose.

19        I think it would actually be less relevant evidence if we

20   were just to show that he was legally using a gun at, you know,

21   a shooting range or something like that.  The Hobbs Act robbery

22   shows a motive and an intent to use a gun and get a gun for an

23   illegal purpose, and that's the point of introducing the

24   evidence.  I think the door is open if he says he was not

25   predisposed to acquire a gun.

1          THE COURT:  Well, in terms of the entrapment defense,

2      do you understand the defense's position that he was entrapped

3      into possessing a firearm as well as in connection with a drug

4      offense?

5          ATTORNEY FOSTER:  I understand that he's arguing he's

6      entrapped for both, yes.

7          THE COURT:  Then you've got to show predisposition

8      for both.

9          ATTORNEY FOSTER:  Correct.

10         THE COURT:  Okay.

11         ATTORNEY FOSTER:  Correct.  And there is law on this,

12     Your Honor.  We cited it.  I'll mention it briefly, the *Baez*

13     case in the Second Circuit and the *McLaurin* case in the Fourth

14     Circuit.  Both of them go to evidence showing a predisposition

15     to engage and use a gun in an illegal context, and that's

16     important, not just using one innocently, but that you'll use

17     one for an illegal purpose.

18         On the privilege issue, I think Your Honor stated the law

19     entirely correctly, the *Coven* case that talks about whether or

20     not it's a collateral purpose such as general credibility.

21     Here, that's all it is.  There are three cases in the Second

22     Circuit that address this exact issue and found that it's

23     cumulative, unnecessary, and that the confrontation right under

24     the Sixth Amendment does not trump attorney-client privilege in

25     this case.

1          THE COURT:  Okay, all right.  Any response?

2          ATTORNEY MATSON:  No, Your Honor.

3          THE COURT:  All right.  So I have reviewed the

4     motions in limine filed by the defense, and both the motions

5     are denied.  The first is involving the exercise of

6     attorney-client privilege.  I, I would note that the defendant

7     will have an opportunity to raise many, if not all, of the same

8     issues that he would raise by having the attorney called as a

9     witness.  So he's not under prejudice.

10          And, in terms of the, the violate, the confrontation of,

11     the Confrontation Clause and attorney-client privilege, one

12     looks to the purpose of the information for which the attorney

13     would be, would be questioned.  Here it only goes to issues

14     which are tangential.  They're issues of credibility.  It's not

15     fundamental facts which will be revealed by the attorney-client

16     privilege.  And, as a result, in the exercise of the Court's

17     discretion, the Court will deny the request for the ability to

18     call the lawyer of the witness.  And I don't -- I may very well

19     follow that up with an argument, with a written opinion.  We'll

20     see.

21          And, in terms of the entrapment defense, again, I

22     understand now the defendant's position, and that is that he

23     was induced to possess a firearm, first, and that he was

24     induced to possess a firearm in furtherance of a drug

25     conspiracy, second.

1        When he claims that he was entrapped to possess a firearm,

2    it opens up the question about whether he was predisposed to

3    possess a firearm.  And here the government has evidence to

4    suggest that he was discussing with another person, at the same

5    time of this particular charge in October of 2019, his intent

6    to have a firearm and to use a firearm in the commission of a,

7    of an offense.

8        Now, so, as a result, I'm going to deny the motion in

9    limine.  I'd like to know a little bit more about the nature of

10   the conversation with the informant, because it may be that

11   there may, that it, there could have been statements that were

12   made which would be overly prejudicial and would not be

13   particularly probative.  So, if I can have a, before the

14   witness testifies, if I can have a proffer from the government

15   as to what exactly this witness would say, it may be that I

16   restrict some of the statements which could be overly

17   prejudicial, but I don't know exactly what the government's

18   proffer is at this point.  So I reserve judgment at least on

19   that aspect of the motion in limine.

20       Okay.  So that's, that addresses the motions in limine.

21   The government's request is to dismiss Counts 3 and 4.  Is

22   there any objection to dismissing Counts 3 and 4?

23            ATTORNEY MATSON:  No objection, Your Honor.

24            THE COURT:  Okay.  So those, that request is granted.

25   So let's begin a pretrial conference, and the first thing I

1    want to address are Covid issues.  The Court is unclear as to

2    whether the Court -- okay.  So I've just been notified by court

3    staff that the trial will actually be conducted on the fifth

4    floor in the main courtroom.  Because of the Covid concerns,

5    I've asked Judge Reiss for permission to use her courtroom, and

6    she said that's fine.

7         So we're going to be having the trial in the main

8    courtroom.  That means the jurors can be spread out quite a bit

9    more, that the parties would not be as close to the jury pool,

10   and we would be able to draw a jury with a little bit more

11   room.  All right?  I think that addresses the Covid concerns

12   that I have.  Because this is really, would really be tight for

13   a trial during the Covid times.  Are there any other concerns,

14   at least in regard to Covid first, but then any other concerns

15   that the parties have that we can address them now?

16             ATTORNEY FULLER:  We don't have any Covid concern,

17   Your Honor, but we did talk the last time we were here about

18   having an entrapment instruction before we pick the jury.  So I

19   don't know if Your Honor is envisioning having a discussion

20   before the jury comes in or having it now.

21             THE COURT:  It would be while -- it would be Monday

22   morning.

23             ATTORNEY FULLER:  Okay.  That's fine, just as long

24   as, you know, we have an understanding of what that instruction

25   says.

 1              THE COURT:  I think I made clear in the last hearing
 2      that the defendant is relying upon inducement, that is, the
 3      officers calling him for these transactions.  Still unclear as
 4      to how they're actually going to show inducement to the
 5      possession of a firearm, but at least they would be able to say
 6      inducement in terms of the purpose of distributing drugs.  So
 7      they've announced that, and, in fact, Mr. Matson has said that
 8      it's likely to be in the opening statement.
 9              So my sense is that opens up the door to predisposition.
10      I mean, that's satisfied.  I know that Mr. Foster wanted me to
11      make a ruling when they've offered sufficient evidence raising
12      the question.  I think they've done that by the use of this
13      inducement argument.  So I, I would just fully expect that
14      you'd be able to go with predisposition evidence from the
15      beginning.
16              ATTORNEY FULLER:  Okay.  Thank you, Your Honor.  I
17      did have one -- of course, Mr. Matson's client doesn't have an
18      obligation to open right after us, doesn't have an obligation
19      to raise that defense or any defense.  We have -- I know Your
20      Honor in the past has been okay with having exhibits shown
21      during opening.
22              THE COURT:  Yes.
23              ATTORNEY FULLER:  We have two exhibits we were
24      thinking about showing.  One is a video of cocaine.  The other
25      is a video of Mr. Martin holding a firearm and that -- or not a

1    video, it's a photo.  That photo of Mr. Martin holding a

2    firearm, there will be testimony we expect later on in the

3    trial which indicates from the metadata of that picture that it

4    was taken shortly before the 924(c) reverse.

5        So the government's position on that photograph is that,

6    even if there is not an entrapment defense, even if Mr. Matson

7    doesn't open, that the picture of the defendant carrying a

8    firearm shortly before the 924(c) reverse is actually part and

9    parcel of the charge itself.  It's not dependent.  That, the

10   admissibility of that photograph is not dependent on the

11   entrapment defense.

12             THE COURT:  Okay.  So the date of Count 2 is October

13   19, as I recall.

14             ATTORNEY FULLER:  The date of Count 2 is October

15   23rd.

16             THE COURT:  23rd?  Okay.

17             ATTORNEY FULLER:  And the metadata on the photo is

18   October 11th.

19             THE COURT:  Okay.

20             ATTORNEY FULLER:  So before we -- you know, I

21   certainly don't want to show the photo in opening if Your Honor

22   -- we're looking for a ruling from Your Honor as to whether

23   Your Honor views that photograph as part of the evidence of the

24   924(c), so exclusive of the entrapment, because we would like

25   to show it to the jury in the opening but obviously will not do

1    so if -- we're hoping for an advance ruling that it is part of

2    the 924(c), the evidence for the 924(c) crime.

3            THE COURT:  Is it the same gun; do you know?

4            ATTORNEY FULLER:  Same gun?  Well, the gun that

5    Mr. Martin traded --

6            THE COURT:  The 11th and the 23rd, the same gun that

7    he was in possession of?

8            ATTORNEY FULLER:  On the 23rd, Your Honor, when he,

9    the charged conduct was actually a reverse.  So it was the ATF

10    agent providing a firearm to Mr. Martin.

11            THE COURT:  Oh, okay.

12            ATTORNEY FULLER:  So the firearm that Mr. Martin is

13    holding, actually, it, this gets too deep into the weeds, but

14    the firearm that Mr. Martin is holding is part of the robbery

15    firearm.  It's the same night of the robbery.  But we wouldn't

16    be talking about it for that purpose.  We'd be talking about it

17    with him in the photo as it relates to the evidence of the

18    924(c).

19            THE COURT:  Right.  Okay.  Your response to that?

20            ATTORNEY MATSON:  So, if I'm understanding this

21    correctly, they want the photo as being relevant to the charge

22    that, on October 23rd 2019, Carl Martin possessed a firearm

23    that he received from an undercover?

24            THE COURT:  I, I fail to see the connection.

25            ATTORNEY MATSON:  Yeah, I don't think it's relevant

1    to the substantive charge.

2             THE COURT:  Right.  I don't see that possession as

3    being relevant to the 924(c) count except for predisposition.

4             ATTORNEY FULLER:  Okay.

5             THE COURT:  So, in other words, I guess I'm

6    suggesting that you not include it within your opening

7    statement.

8             ATTORNEY FULLER:  That's fine.  The video seems to be

9    not the same issue.  It is a -- the evidence would establish

10   that the video, the CI -- the UC will testify, the ATF

11   undercover agent, will testify he received the video from

12   Mr. Martin, and it contains a white substance.  So, again,

13   we're looking for the same sort of --

14            THE COURT:  Okay.  Any objection to this video?

15            ATTORNEY MATSON:  No, Judge.  That comes in,

16   obviously.

17            THE COURT:  All right.  You can use the video.

18            ATTORNEY FULLER:  We don't have anything else from

19   the government, Your Honor.

20            THE COURT:  All right.  Mr. Matson?

21            ATTORNEY MATSON:  All issues are on the table, Judge.

22   I'm just trying to think of how to -- I've talked to Attorney

23   Fuller this past week about some issues that may come up.

24   Attorney Fuller was concerned about text messages, 600 pages in

25   the exhibit list.  Judge, just raising this now -- I don't want

1    to speak on your behalf, okay?  No.

2              ATTORNEY FULLER:  You do a good job of that.

3              ATTORNEY MATSON:  Great, okay.

4              THE COURT:  You're doing a fine job.  Go ahead.

5              ATTORNEY MATSON:  I'll keep going.  Judge, there are

6    some text messages between a confidential informant and an

7    investigating officer that span two years.  There's 600 of

8    them.  I premarked them all as an exhibit.  I, I don't know how

9    I'm going to use them, right?  That's why I premarked them all

10   as an exhibit.  Attorney Fuller was concerned that I was going

11   to stick 600 pages in front of the jury.  Again, it depends

12   what the witness testifies to.  I'm just highlighting it to

13   Your Honor.  There probably will be some significant hearsay

14   issues in this case, but, when it comes to the premarked 600

15   pages, I don't want anyone to be surprised.

16             ATTORNEY FULLER:  That is certainly my concern.  When

17   I saw a 600-page exhibit, I think I actually asked Mr. Matson,

18   "Do you have a theory of admissibility as to each text

19   message?"  I understand that he doesn't have to preview his

20   defense, he doesn't have to tell me what he's going to use.  I

21   just was going to raise it for the Court so that the Court was

22   sort of aware that this issue was floating out there.  There

23   may be some lengthy discussion about what is admissible, what

24   isn't admissible in those 600 pages.  So I just wanted to

25   preview that for the Court.

```
 1                    THE COURT:  Okay.  I'm on notice.
 2                    ATTORNEY MATSON:  Related, Judge, I addressed to, in
 3       regard to those text messages, again, that's, that's a police
 4       officer working with a confidential informant, and they text a
 5       lot over two years.  I asked --
 6                    THE COURT:  And this confidential informant -- I
 7       mean, I assume it's the same one -- he will testify?
 8                    ATTORNEY FULLER:  He is not testifying, not for the
 9       government.
10                    ATTORNEY MATSON:  Not on the government list.  That
11       brings to the point.  I asked Attorney Fuller if she would
12       agree that they were adverse witnesses for the point I'm
13       calling them in the defense case in chief.  I thought it was
14       fairly straightforward that they were adverse witnesses in that
15       they, in my opinion, concocted four controlled purchases with
16       Carl Martin.  Attorney Fuller does not concede that point.  I
17       may file something, Judge, in advance.  I'm not trying to be
18       eleventh hour.  I honestly didn't think it would be an issue,
19       but it will.  It's fine.  And I'll probably file some --
20                    THE COURT:  Yeah, you might want to say exactly how
21       they received the benefit for their cooperation, what benefit
22       they received, and then your argument would be they would be
23       hostile witnesses, you can call them to testify, and you'd be
24       able to ask leading questions.
25                    ATTORNEY MATSON:  Okay.  I'll file something within
```

1    the next 24 hours, Judge.  Thank you.

2                  THE COURT:  Okay, all right.  Is there anything else?

3                  ATTORNEY MATSON:  No, Judge, nothing on my list.

4                  THE COURT:  So, as far as the schedule goes, my

5    expectation was that it was going to be a four-day trial.  Is

6    that not correct?

7                  ATTORNEY FULLER:  I think the government's evidence

8    we could get it in in three and a half.  I don't know what he

9    has for witnesses, but I think this, we will definitely, with

10   opening, with picking the jury on Monday, maybe opening

11   hopefully Monday afternoon, I think we will go through most of

12   Thursday.

13                 THE COURT:  And I was going to have the trial day go

14   from 9:00 to 12:00 and 1:00 to 4:00.  A couple of days that

15   there are conflicts after 4:00.  So I thought we would make it

16   a standard 9:00 to 12:00, 1:00 to 4:00, breaks, obviously, in

17   the middle.  And, Mr. Matson, do you anticipate the trial

18   lasting longer than four days?

19                 ATTORNEY MATSON:  No, Your Honor.  I'm having quite a

20   bit of trouble finding that confidential informant, I'll say.

21   So --

22                 THE COURT:  You're having trouble finding him?

23                 ATTORNEY MATSON:  Been chasing him all over the

24   place.

25                 THE COURT:  Really, you're chasing him?

```
 1                    ATTORNEY MATSON:  Oh, yes.  He's running from me.
 2                    THE COURT:  So that falls within the function of a
 3       criminal defense lawyer --
 4                    ATTORNEY MATSON:  Chasing?
 5                    THE COURT:  -- chasing witnesses.
 6                    ATTORNEY MATSON:  Well, no comment, but, Judge, so
 7       what, that would be two witnesses.
 8                    THE COURT:  Okay.
 9                    ATTORNEY MATSON:  And I would think that I could be
10       done in an afternoon.
11                    THE COURT:  And the government really thinks it's
12       going to take three and a half days?
13                    ATTORNEY FULLER:  Your Honor, we are still trying to
14       work out some stipulations.  I think so.  I mean, I just, I
15       would rather err on the side of too long than too short.
16                    THE COURT:  And how many witnesses do you have?
17                    ATTORNEY FULLER:  That's a good question.  We can
18       give you a count right now, Your Honor.
19                    ATTORNEY MATSON:  It's not an uncomplicated case,
20       Judge.  It's been really difficult actually getting it all
21       together.  So --
22                    ATTORNEY FULLER:  I believe the most we would have
23       would be 13, but with some stipulations, hoping to --
24                    THE COURT:  It would be less than that?  Okay.  Then
25       a final question:  In light of the need for preparation, is
```

1    there any chance of resolution?

2                ATTORNEY MATSON:  I don't believe so, Your Honor.

3                ATTORNEY FULLER:  The government did extend a plea

4    agreement last weekend, and that was not accepted.

5                THE COURT:  Okay.

6                ATTORNEY FULLER:  So I don't believe there is at this

7    point.

8                THE COURT:  All right.  That's, Mr. Matson, is that

9    correct?  And do I need to go over the offer of the plea

10   agreement with your client to make sure that he made a --

11               ATTORNEY MATSON:  No, Your Honor.  An offer was made.

12   It was conveyed to Mr. Martin.  That offer did not result in

13   resolution.

14               THE COURT:  Okay, all right.  And you don't

15   anticipate it in light of --

16               ATTORNEY MATSON:  Not unless something happens when I

17   walk out that door, Judge, in the next five minutes.

18               THE COURT:  In the next five minutes?

19               ATTORNEY MATSON:  I'm just trying to think of, you

20   know, one step at a time.

21               THE COURT:  Yeah, take it step by step.  Okay, all

22   right.

23               ATTORNEY FULLER:  Would Your Honor -- I'm just kind

24   of thinking about the timing of this.  If the government's case

25   does take us through Thursday and the defense, if they do call

1    witnesses Friday morning, we close Friday afternoon --

2              THE COURT:  Yes.

3              ATTORNEY FULLER:  -- what is the Court's practice if

4    the jurors deliberate?  I mean, is it over the weekend?  Would

5    they come back on Monday?

6              THE COURT:  They would come back on Monday.

7              ATTORNEY FULLER:  Okay.  Thank you.

8              THE COURT:  Yeah.  Okay, all right.  Thank you.

9              ATTORNEY FULLER:  Thank you.

10              ATTORNEY MATSON:  Thank you.

11

12              (Whereupon at 2:06 p.m. the hearing was adjourned.)

13

14                    C E R T I F I C A T E

15              I, Sunnie Donath, RMR, Official Court Reporter

16    for the United States District Court, District of Vermont, do

17    hereby certify that the foregoing pages are a true and accurate

18    transcription of my stenographic notes of the hearing taken

19    before me in the above-titled matter on June 2, 2022 to the

20    best of my skill and ability.

21

22                            *Sunnie Donath, RMR*

23              --------------------------------

24                    Sunnie Donath, RMR

25